UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAMUEL A. DAVIS,<br><br>          Plaintiff,<br><br>     v.<br><br>ANGEL QUIROS, *et al.*,<br><br>          Defendants. | Civil Action No. 3:19-cv-504 (CSH)<br><br>**NOVEMBER 1, 2021** |

### MEMORANDUM AND ORDER ON
### DEFENDANTS' MOTION TO DISMISS

**HAIGHT, Senior District Judge:**

Plaintiff Samuel A. Davis ("Plaintiff"), a convicted state prisoner currently incarcerated at Cheshire Correctional Institution,[1] brings this action against multiple employees (collectively, "Defendants") of the Connecticut Department of Correction ("DOC").[2] By way of his Amended Complaint, Doc. 8 ("Am. Compl."), filed with this Court on May 21, 2019, Plaintiff alleges that, while incarcerated at MacDougall Walker Correctional Institution ("MWCI"), certain of the Defendants physically assaulted him, sprayed him with a chemical agent, placed him in in-cell restraints, and subjected him to restrictive conditions of confinement in violation of the Eighth

---

[1] Following a jury trial, Plaintiff was found guilty on charges of felony murder, attempted robbery in the first degree, conspiracy to commit robbery in the first degree, and carrying a firearm without a permit, and he subsequently was sentenced to a total effective term of 100 years in prison. *See State v. Davis*, 796 A.2d 596, 600–02 (Conn. App. Ct. 2002), *aff'd*, 818 A.2d 777 (Conn. 2003). Plaintiff's current place of incarceration is available through a directory maintained by DOC. See Conn. Dep't of Correction, Offender Information Search, http://www.ctinmateinfo.state.ct.us/ (last visited November 1, 2021).

[2] The Amended Complaint names the following individuals as Defendants: then-Deputy Commissioner Monica Rinaldi; then-District Administrator Angel Quiros; Director of Population Management Maiga (identified by Plaintiff as "Maigo"); Administrative Segregation Hearing Officer Karen Martucci; then-Warden William Mulligan; Deputy Warden Joseph Roach; Captains Burgos and Johnson; Lieutenants Roy, Valentin, McCreary, and Acus; and Correctional Officers Douglas LaMountain, Koza, and Peterson. Am. Compl. at 1–5 ¶¶ 4–19.

Amendment; and that other Defendants failed to afford him due process in violation of the Fourteenth Amendment, in connection with his placement on administrative segregation status at Northern Correctional Institution ("Northern"), a level 5 maximum security prison. *See* Am. Compl. at 14–25.

In an Initial Review Order reported as *Davis v. Rinaldi*, 2019 WL 7879729 (D. Conn. Oct. 31, 2019), this Court denied Plaintiff's requests for declaratory relief and injunctive relief, dismissed all claims against Defendants Deputy Commissioner Monica Rinaldi and Lieutenant Roy, and dismissed all claims against the remaining Defendants in their official capacities. *See Davis*, 2019 WL 7879729 at \*13. The Court concluded, however, that the following claims could proceed against the remaining Defendants, in their individual capacities: Plaintiff's Fourteenth Amendment claim that Defendants Maiga, Martucci, and Acus violated Plaintiff's procedural due process rights in connection with his placement on administrative segregation status without a fair hearing; Plaintiff's Eighth Amendment claim that Defendants Quiros, Mulligan, Roach, Burgos, and Valentin subjected Plaintiff to in-cell restraints without a legitimate penological objective; Plaintiff's Eighth Amendment claim that Defendants LaMountain, Koza, Peterson, and McCreary used excessive force against Plaintiff; and Plaintiff's Eighth Amendment claim that Defendants Mulligan, Burgos, Johnson, and McCreary failed to protect Plaintiff from a substantial risk of harm. *Id.*

Six of these remaining Defendants (collectively, the "Moving Defendants") now have moved to dismiss certain of Plaintiff's claims against them. Defendants Quiros, Mulligan, Roach, Burgos, and Valentin seek dismissal of Plaintiff's Eighth Amendment in-cell restraint claim. *See generally* Doc. 27; Doc. 27-1 ("Defs.' Mem.") at 4–20. Defendant Maiga, meanwhile, seeks dismissal of the Fourteenth Amendment procedural due process claim against him. *Id.* at 21–22.

2

Plaintiff has opposed the Moving Defendants' motion. *See generally* Doc. 35 ("Pl.'s Opp."). For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Moving Defendants' motion.

## I. FACTUAL BACKGROUND

The following facts are derived from Plaintiff's Amended Complaint and are taken as true only for the purposes of this motion.

Plaintiff arrived at MWCI in September 2017. Am. Compl. at 5 ¶ 21. On April 8, 2018, prison officials placed Plaintiff in the restrictive housing unit ("RHU") because he had received a disciplinary report for fighting with another inmate. *Id.* ¶ 22.

On April 19, 2018, prison officials transported Plaintiff from the RHU to the University of Connecticut Health Center for a medical appointment. *Id.* ¶¶ 22–23. Before leaving, Plaintiff spoke to Captain Johnson, who was the third shift captain that morning, regarding "issues that he had been having with C/O LaMountain." *Id.* at 3 ¶ 11, 5 ¶ 23.

Upon Plaintiff's return to MWCI later that day at approximately 7:00 p.m., an officer placed him in the "bullpen" in the admitting and processing ("A & P") area. *Id.* at 6 ¶ 24. Captain Burgos was the shift commander at that time, meaning he was "responsible for everything that happen[ed] on his watch." *Id.* at 3 ¶ 10. Lieutenant Valentin was the shift supervisor at that time and similarly responsible. *Id.* at 3 ¶ 13.

Correctional Officer Koza called Plaintiff from the "bullpen" to be strip-searched in a separate area. *Id.* 6 ¶ 24. As Plaintiff moved towards the strip search area, Correctional Officer LaMountain arrived in the A & P area to escort him back to the RHU. *Id.* Correctional Officer LaMountain told Plaintiff to "get the F*** in there" and hit him twice in the side. *Id.* Plaintiff replied to Correctional Officer LaMountain "what the F*** is wrong with you." *Id.* Correctional

Officer LaMountain then grabbed Plaintiff and attempted to "body slam" him. *Id.* Plaintiff "wrapped his arms around" Correctional Officer LaMountain in an effort to prevent Correctional Officer LaMountain from "body slamming" him and potentially causing Plaintiff to "bust his head on the floor." *Id.* Plaintiff's body hit the ground, and Correctional Officer LaMountain hit him several additional times. *Id.*

At 7:06 p.m., officers called a "Code Orange," which signals that an assault on a staff member has occurred. *Id.* ¶ 25. Correctional Officers Koza and Peterson were the first to arrive at the scene of the altercation between Plaintiff and Correctional Officer LaMountain. *Id.* ¶¶ 24, 25. Correctional Officer Koza grabbed Plaintiff and started hitting him with closed fists. *Id.* ¶¶ 25, 26. Correctional Officer Peterson then started kneeing Plaintiff in the side. *Id.* ¶ 26. In addition, East Sector Supervisor Lieutenant McCreary twice administered a chemical agent to Plaintiff's face to gain control of him. *Id.* at 4 ¶ 14, 17 ¶ 9, 22 ¶ 8.

After the altercation, correctional officers escorted Plaintiff to MWCI's medical unit to be evaluated. *Id.* at 6 ¶ 27. Plaintiff complained to a medical staff member about severe pain in his shoulder and side, problems with his eye and a migraine headache. *Id.* Correctional officers then escorted Plaintiff back to a cell in the RHU and applied in-cell restraints to his limbs. *Id.* at 7 ¶ 28. The restraints consisted of handcuffs on his wrists, shackles on his ankles, and a chain around his waist, which were attached to a black box. *Id.* After the application of restraints, Plaintiff was unable to use the toilet without assistance. *Id.* Officers occasionally asked Plaintiff if he needed to use the bathroom but would leave the restraints on. *Id.*

In addition to being placed in in-cell restraints, Plaintiff was charged with assault on a peace officer and breach of peace in connection with the altercation by an officer of the

4

Connecticut State Police who responded to the incident. *Id.* at 9 ¶ 40. These charges eventually were dismissed. *Id.* at 13 ¶ 57.

The following day, on April 20, 2019, prison officials transferred Plaintiff to Northern, where inmates are confined in their cells for twenty-three hours a day, with one hour of exercise. *Id.* at 7 ¶ 29.

On May 17, 2018, Plaintiff participated in a hearing to determine whether prison officials would place him on administrative segregation status. *Id.* at 9 ¶ 42. Hearing Officer Martucci conducted the administrative segregation hearing. *Id.* at 2 ¶ 7. Lieutenant Acus was the disciplinary hearing officer responsible for ensuring Plaintiff received a fair administrative segregation hearing. *Id.* at 4 ¶ 15. Following the hearing, Director of Population Management Maiga authorized Plaintiff's placement on administrative segregation status. *See id.* 2 ¶ 6. On May 23, 2018, Plaintiff appealed his administrative segregation placement. *Id.* at 10 ¶ 43. On June 27, 2018, Deputy Commissioner Monica Rinaldi denied Plaintiff's appeal of his placement on administrative segregation status on the ground that the totality of the circumstances—which indicated that Plaintiff was a threat to the safety and/or security of others—justified his placement in accordance with DOC Administrative Directive 9.4. *Id.* ¶ 44.

## II. STANDARD OF REVIEW

In order to withstand a motion to dismiss filed pursuant to Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a plaintiff has met this standard, the Court must "accept[] all factual allegations as true and draw[] all reasonable inferences [from those facts] in the plaintiff's favor." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58,

77 (2d Cir. 2017) (quoting *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)). The Court's review is limited to the "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although detailed factual allegations are not required, *Keller v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014), mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

It is well-established that "[p]ro se submissions are reviewed with 'special solicitude,' and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Bloodywone v. Bellnier*, 778 F. App'x 52, 53 (2d Cir. 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)). *See also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). Nevertheless, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the court furthermore may not invent factual allegations a *pro se* plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quotation marks and citations omitted).

### III.  DISCUSSION

Defendants Quiros, Mulligan, Roach, Burgos, and Valentin (collectively, the "In-Cell Restraints Defendants") move to dismiss the claim that they subjected Plaintiff to in-cell restraints for approximately twenty-four hours without a legitimate penological objective, in violation of the Eighth Amendment. The In-Cell Restraints Defendants' principal argument is that Plaintiff's Amended Complaint and the exhibits attached thereto demonstrate that Plaintiff did not properly exhaust his available administrative remedies regarding the application of in-cell restraints prior to filing this action. *See* Defs.' Mem. at 4–8. In the alternative, the In-Cell Restraints Defendants contend that even if Plaintiff did exhaust his available remedies, the allegations regarding his confinement in in-cell restraints do not state a plausible claim under the Eighth Amendment, and that even if the Court concludes that the alleged facts do state a plausible Eighth Amendment claim, they are entitled to qualified immunity. *See id.* at 8–17.

Defendant Quiros asserts a separate argument regarding his personal involvement in the decision to place Plaintiff in in-cell restraints. Defendant Quiros contends that he is entitled to qualified immunity because it was not clearly established in April 2018 that merely responding to a grievance demonstrated personal involvement in the underlying constitutional violation. *See id.* at 18–20.

Finally, Defendant Maiga moves to dismiss the Fourteenth Amendment procedural due process claim asserted against him. He argues that he is entitled to qualified immunity as to his involvement in the May 2018 decision to place Plaintiff on administrative segregation status. *See id.* at 21–22.

As explained in greater detail below, the Court concludes that Plaintiff's Amended Complaint and the exhibits attached thereto demonstrate that Plaintiff failed to properly or fully exhaust his administrative remedies with respect to his placement in in-cell restraints.

Accordingly, the Eighth Amendment in-cell restraints claim shall be DISMISSED WITH PREJUDICE.[3] Meanwhile, Defendant Maiga's argument that he is entitled to qualified immunity based on the facts alleged in the Amended Complaint is DENIED.

### A. Plaintiff's Placement in In-Cell Restraints

The In-Cell Restraints Defendants argue that it is clear from the allegations in the Amended Complaint and the exhibits appended to the Amended Complaint that Plaintiff did not properly exhaust the administrative remedies available to him pursuant to DOC Administrative Directive 9.6, as was in effect at the time of the incidents underlying this lawsuit.[4] Plaintiff meanwhile contends that the Amended Complaint and exhibits do in fact demonstrate that he has exhausted his administrative remedies. *See* Pl.'s Opp. at 5–7. Plaintiff argues that he "made all reasonable attempts to . . . prosecute grievances," after initially being denied his eyeglasses and any writing utensils following his transfer to Northern, and that DOC staff did not respond to the grievances he submitted. *Id.*

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104–134, 110 Stat. 1321 (1996), limits prisoners' ability to initiate suits under 42 U.S.C. § 1983, among other federal

---

[3] Because Plaintiff's evident failure to exhaust his remedies completely disposes of the in-cell restraints claim, the Court does not address—and expresses no view upon—the other arguments made by the In-Cell Restraints Defendants in support of dismissal of that claim.

[4] The Moving Defendants have supplied the Court with a copy of Administrative Directive 9.6 as was in effect at the time of the incidents that are the subject of Plaintiff's Amended Complaint. *See* Administrative Directive 9.6 (eff. Aug. 13, 2013), Doc. 27-3. DOC has since promulgated a new version of Administrative Directive 9.6. *See* Conn. Dep't of Correction, Administrative Directives, Administrative Directive 9.6 (eff. Apr. 30, 2021), https://portal.ct.gov/DOC/AD/AD-Chapter-9 (last visited November 1, 2021). Because Plaintiff's Amended Complaint and exhibits refer at various points to Administrative Directive 9.6 as was in effect from August 15, 2013 through April 29, 2021, and Plaintiff's framing of his claims relies on proper PLRA exhaustion (which in turn depends upon full compliance with Administrative Directive 9.6), *see* Am. Compl. at 13 ¶ 58, the Court will consider and cite herein the August 15, 2013 version of the DOC's administrative remedy procedures. *Cf. Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion"). Administrative Directive 9.6 also is the type of document of which the Court may take judicial notice at this stage of proceedings. *See Christman v. Skinner,* 468 F.2d 723, 726 (2d Cir. 1972) (court may take judicial notice of prison regulations when considering a motion to dismiss).

8

statutes. In relevant part, the PLRA provides that a prisoner may not file a lawsuit regarding prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the type of relief that the inmate seeks. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, a prisoner must comply with *all* procedural rules regarding the administrative process for his or her claims to be "exhausted," prior to commencing an action in federal court. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." (citing *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006))); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007) ("Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

A plaintiff's failure to exhaust his or her remedies is an affirmative defense, not a pleading requirement, but a "district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citing *Jones*, 549 U.S. at 215–16). An inmate's failure to exhaust administrative remedies only is excusable if the administrative remedies were not truly "available." *See Ross v. Blake*, ⸺ U.S. ⸺, 136 S. Ct. 1850, 1859 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures

that are 'capable of use' to obtain 'some relief for the action complained of.'" (quoting *Booth*, 532 U.S. at 738)). The Supreme Court has identified at least three circumstances constituting such unavailability: namely, when an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; and, finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. Put simply, "a plaintiff . . . must establish that the administrative review process is so overburdened, inefficient, or hostile as to be effectively unavailable to remedy the complaint." *McPherson v. Lamont*, 457 F. Supp. 3d 67, 79 (D. Conn. 2020).

Administrative Directive 9.6 sets forth the procedures a Connecticut state prisoner must use "to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to" the authority of DOC's Commissioner, "enable[ing] the Department to identify individual and systemic problems, to resolve legitimate complaints in a timely manner and to facilitate the accomplishment" of DOC's mission. Admin. Dir. 9.6 § 1. As relevant to Plaintiff's Eighth Amendment in-cell restraints claim, the administrative remedy he was required to use was the Inmate Grievance Procedure. *Id.* §§ 4(A), 6(B).

Before initiating a formal grievance, the Inmate Grievance Procedure requires that a prisoner "attempt to seek informal resolution" of the matter for which he or she seeks a remedy. A prisoner must attempt to do so verbally with a DOC staff member or DOC supervisor, and if a verbal request does not produce a satisfactory response, the prisoner must then complete an Inmate Request Form (form CN9601), which must be addressed to the appropriate DOC staff member.

*Id.* § 6(A). Once the CN9601 form is received, the DOC staff member to whom the form has been directed is obliged to respond to the prisoner within fifteen business days. *Id.*

If the DOC staff member does not timely respond to the CN9601 form, or the prisoner is not satisfied with the resolution offered, the prisoner may begin the formal grievance process by filing an Inmate Administrative Remedy Form (form CN9602). *Id.* §§ 5(E)(1)–(2), 6(C). The prisoner's CN9602 form must attach the CN9601 form and DOC staff member response, or explain why no such form and response can be provided. *Id.* § 6(C).[5] The CN9602 form must be filed within thirty calendar days from the date of the incident complained of "or [the] discovery of the cause of the grievance." *Id.* § 6(C). Each CN9602 form is subject to Level 1 review by a DOC Unit Administrator, who is obliged to respond within 30 business days from the day the grievance is received. § 6(I). If the Unit Administrator does not timely respond, or the prisoner's grievance is denied or rejected, the prisoner may launch a Level 2 appeal to a District Administrator. *Id.* §§ 6(G), (K). Level 2 review is the final form of review available for most matters, including those underlying Plaintiff's Amended Complaint. *See id.* § 6(K).[6]

Based on the allegations of the Amended Complaint and the documentary evidence supplied by Plaintiff, *see* Doc. 8 at 30–53 ("Pl.'s Ex. A"), the Court agrees with the In-Cell Restraints Defendants that Plaintiff failed to properly exhaust his Eighth Amendment in-cell restraints claim, notwithstanding Plaintiff's allegation that he exhausted all available administrative remedies with respect to each of his claims before filing this lawsuit, Am. Compl. at 13 ¶ 58. Collectively, the allegations in the Amended Complaint and the exhibits reflect that

---

[5] The CN9602 form additionally should contain a simple and coherent statement of the grievance, "must be free of obscene or vulgar language or content," and should not repeat requests where a final response already has been provided or an initial request is still in process. Admin. Dir. 9.6 §§ 5(E)(3), (5), (7).

[6] For certain other matters, none of which are relevant here, a review at Level 2 may be appealed to Level 3, for review by the DOC Commissioner or his or her designee. Admin. Dir. 9.6 § 6(L).

Plaintiff either did not timely file a grievance concerning his placement in in-cell restraints or, in the alternative, failed to properly exhaust all phases of the Inmate Grievance Process concerning the application of restraints.

Turning, first, to the issue of timeliness: Plaintiff alleges that on September 6, 2018 he "wrote a request Form 9601 to Defendant Captain Burgos at M.W.C.I. regarding him being placed in in-cell restraints on April 19, 2018 which he authorized. The Plaintiff wrote a few requests to Captain Burgos that went unanswered." Am. Compl. at 12 ¶ 52.[7] Plaintiff further alleges that a response was received from Captain Burgos on September 20, 2018,[8] stating that the placement in in-cell restraints had been "within the guidelines of A.D. 6.5." *Id.* at ¶ 53. Evidently dissatisfied with this response, Plaintiff asserts (and his exhibits reflect) that he then filed a Level 1 grievance regarding the matter on September 24, 2018, which was denied by Defendant Warden Mulligan on October 2, 2018. *Id.* at ¶¶ 54–55; Pl.'s Ex. A at A-13a–13b.[9] Warden Mulligan stated that the grievance was denied because of Plaintiff's failure to comply with the thirty-day deadline for filing a grievance, which runs from the date either of the occurrence of the incident underlying the grievance or the discovery of the cause of the grievance. Am. Compl. at 12 ¶ 55; Pl.'s Ex. A. at A-13b. The Amended Complaint implies, and his exhibits reflect, that Plaintiff was permitted to appeal the Level 1 decision to Level 2. *See* Am. Compl. at 12 ¶ 56; Pl.'s Ex. A. at A-13b. Plaintiff filed his Level 2 appeal on October 4, 2018, and it was denied by Defendant Quiros on October

---

[7] Plaintiff appears to have written five requests to Captain Burgos from Northern, in addition to the request of September 6, 2018. Pl.'s Ex. A. at A-13b, A-14.

[8] Based on the relevant exhibit, Captain Burgo's response may have been provided on September 21, 2018. Pl.'s Ex. A. at A-13b.

[9] The Court notes that although the first page of the Level 1 grievance bears a date of September 23, 2018, Plaintiff's signature on the second page is dated September 24, 2018. Pl.'s Ex. A. at A-13a–13b. The Court thus refers to the grievance as the September 24, 2018 grievance.

15, 2018, who agreed with Warden Mulligan's finding that the grievance was untimely. Am. Compl. at 12 ¶ 56; Pl.'s Ex. A. at A-14.

Accepting all of the foregoing as true, it is plain that the Eighth Amendment in-cell restraints claim was not properly preserved for the present litigation if the September 24, 2018 Level 1 grievance was the only one Plaintiff filed concerning the claim. The September 24, 2018 grievance clearly was filed over five months after the incident—well beyond the thirty-day deadline set forth in Administrative Directive 9.6. Plaintiff appears to argue, with respect to this issue of timeliness, that an administrative remedy was not available since he did not have his eyeglasses or access to writing implements for a month after his transfer to Northern. *See* Pl.'s Opp. at 5. Even assuming that such deprivations could have rendered Plaintiff's remedies "unavailable," the argument is belied by Plaintiff's other allegations and exhibits, which reflect that he filed a formal grievance from Northern possibly as soon as April 25, 2018, and certainly not later than May 16, 2018—that is, within the thirty-day window for filing a formal grievance regarding the application of in-cell restraints. *See* Am. Compl. at 7 ¶ 30; Pl.'s Ex. A. at A-3a–4b. Accordingly, Plaintiff's claim cannot cross the threshold set by the PLRA.

The Court additionally considers, however, Plaintiff's assertion that he wrote grievances that were ignored, again arguing that his administrative remedies therefore were not available. *See* Pl.'s Opp. at 5–6. The Court notes that Plaintiff's October 4, 2018 form appealing the rejection of his September 24, 2018 Level 1 grievance provides a foundation for this theory, as it contains an allegation that Plaintiff had filed a prior Level 1 grievance during his confinement at Northern and had not receive a response to it. Ex. A. at A-14.

Even if the Court were to assume that this unanswered grievance concerned Plaintiff's placement in in-cell restraints,[10] and further were to assume that it had been filed in the thirty-day window provided by Administrative Directive 9.6, the Court still could not reasonably infer that Plaintiff fully exhausted the in-cell restraints claim. As noted earlier in this opinion, Administrative Directive 9.6 provides that an inmate may appeal to Level 2 if he or she does not receive a timely response to a Level 1 grievance. *See* Admin. Dir. 9.6 § 6(I) ("If a response to a Level 1 grievance is not received within 30 business days, an inmate may appeal to Level 2."). Plaintiff nowhere alleges, however, that he filed a Level 2 appeal of the untimely response to the unanswered Level 1 grievance. Instead, it appears from the face of the October 4, 2018 Level 2 appeal form that Plaintiff reverted to sending informal requests to Defendant Captain Burgos after the purported Level 1 grievance went unanswered, and then raised the issue of the unanswered grievance for the first time during the appeal of the rejection of the September 24, 2018 Level 1 grievance. *See* Ex. A. at A-14. Plaintiff's unavailability argument thus is unpersuasive: he simply appears not to have proceeded through each step of the Inmate Grievance Process, even as that process afforded him an opportunity to promptly address the alleged lack of response to his grievance. *See, e.g.*, *Taylor v. New York City Dep't of Corrections*, 849 F. App'x 5, 8 (2d Cir. 2021) ("The prison officials' failure to respond to some of [plaintiff's] grievances did not render the [grievance] administrative procedure unavailable. . . . The [grievance procedure] contemplates that prison officials might not always respond to inmates' grievances. It sets forth the procedure to follow in such circumstances." (citing *Williams*, 829 F.3d at 123–24)). Even construing Plaintiff's allegations and exhibits liberally, the Court on this alternative basis further cannot

---

[10] The Court observes that Plaintiff did not specify in the October 4, 2018 Level 2 appeal form what, exactly, the alleged unanswered grievance concerned. Given Plaintiff's phrasing of his allegations, it seems to the Court possible that the alleged unanswered grievance concerned Captain Burgos's failure to respond to Plaintiff's informal requests. *See* Pl.'s Ex. A. at A-14.

14

reasonably conclude that Plaintiff's unanswered grievance (if it ever existed) was fully exhausted, as required by the PLRA.

Because it is clear from the face of the Amended Complaint and Plaintiff's exhibits that Plaintiff did not properly or fully exhaust his available administrative remedies as to the Eighth Amendment in-cell restraints claim prior to filing this action, as required by 42 U.S.C. § 1997e(a), the motion to dismiss is GRANTED on this ground. The Eighth Amendment claim that Defendants Quiros, Mulligan, Roach, Burgos, and Valentin subjected Plaintiff to in-cell restraints from April 19, 2018 to April 20, 2018 without a legitimate penological objective is DISMISSED WITH PREJUDICE.

### B. Plaintiff's Placement on Administrative Segregation Status

Defendant Maiga argues that he is entitled to qualified immunity as to the claim that he violated Plaintiff's Fourteenth Amendment procedural due process rights in connection with the hearing held to determine whether to place Plaintiff on administrative segregation status. Specifically, Defendant Maiga asserts that it was not clearly established within the Second Circuit in May 2018 that a supervisory official's simple affirmation of the disposition reached by a hearing officer at the conclusion of a prison disciplinary hearing could create liability for the supervisor arising out of any alleged procedural due process violations that may have occurred during the hearing. Defs.' Mem. at 21–22. In response, Plaintiff contends that Defendant Maiga did not "merely affirm" the hearing officer's determination that he should be placed on administrative segregation status, but, *inter alia*, did not provide Plaintiff with adequate notice for the administrative segregation hearing. *See* Pl.'s Opp. at 20, 23–24.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

15

reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)). In essence, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)

A defendant may prevail on his or her qualified immunity defense on a Rule 12(b)(6) motion where "facts supporting the defense appear on the face of the complaint," and "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quotation marks and citations omitted). "Although courts should resolve the question of qualified immunity at the earliest possible stage in litigation, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (quotation marks and citations omitted).

In this Circuit, precedent clearly established in May 2018 that an individual named as a "defendant in a § 1983 action [could] not be held liable for damages for constitutional violations merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) and *Leonhard v. United States*, 633 F.2d 599, 621 n.30 (2d Cir. 1980)). Rather, a supervisory defendant's liability was contingent on his or her "personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013) (citing *Back v. Hastings on Hudson*

*Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004), *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997), *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), and *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)).

Defendant Maiga contends that district courts within this Circuit have been divided as to whether a prison official who reviews and affirms the decision of a disciplinary hearing officer on appeal is personally involved in the underlying procedural due process violations that may have occurred during the hearing.  *See* Defs.' Mem at 21 (citing *Colon v. Annucci*, 344 F. Supp. 3d 612, 630 (S.D.N.Y. 2018) and *Constant v. Annucci*, No. 16-CV-3985, 2018 WL 1684411 (S.D.N.Y. Apr. 5, 2018)).  Defendant Maiga argues that given the unsettled law in this area, he is entitled to qualified immunity because it would not have been clear to a reasonable official in his position that affirming the decision of the administrative segregation hearing officer, despite the procedural errors that allegedly had occurred in connection with the segregation placement hearing, would violate Plaintiff's Fourteenth Amendment procedural due process rights.  *Id.*

Defendant Maiga reads Plaintiff's allegations against him too narrowly, however.  If the Amended Complaint is construed liberally (as it must be at this stage), Plaintiff does not allege that Defendant Maiga is liable *simply* because Defendant Maiga authorized Plaintiff's placement in administrative segregation.  Instead, Plaintiff's Amended Complaint alleges that Defendant Maiga, as the Director of Offender Classification and Population Management, played a central role in the alleged deprivation of Plaintiff's procedural due process rights by failing to provide Plaintiff with notice of the administrative segregation hearing, thereby depriving Plaintiff of an opportunity to prepare a defense to the charges against him, *in addition to* making the final decision as to whether to place Plaintiff on administrative segregation status following the hearing.  *See* Am. Compl. at 2 ¶ 6, 14 ¶ 3.

Plaintiff's allegations are not inconsistent with DOC Administrative Directive 9.4, of which the Court takes judicial notice.[11]  Administrative Directive 9.4 states that "[p]lacement of an inmate on Administrative Segregation Status shall be at the discretion of the Director of Offender Classification and Population Management in accordance with this Directive."  Admin. Dir. 9.4 § 12(A).  Chief among the requirements of Administrative Directive 9.4 is that "[a]n inmate shall not be placed in Administrative Segregation Status without notice and a hearing."  *Id.*  To conduct the hearing and review the relevant evidence, Administrative Directive 9.4 requires the Director of Offender Classification and Population Management to designate an Administrative Segregation Hearing Officer.  *Id.* § 12(B).  However, Administrative Directive 9.4 does not specify *which* official is responsible for providing a prisoner with notice of the hearing and the reason it is being held: Administrative Directive 9.4 merely states that "[a] written notice of the hearing and the reasons for the hearing shall be given to the inmate a minimum of two (2) business days prior to the hearing utilizing CN 9402, Notification of Hearing."  *Id.* § 12(C).  It is thus plausible that Defendant Maiga personally failed to provide the notice due to Plaintiff, as Plaintiff's Amended Complaint suggests.

Put simply, then, the Court concludes that Plaintiff's allegations, and the inferences to which he is entitled at this stage of proceedings, are sufficient to defeat Defendant Maiga's contention that he is entitled to qualified immunity due to his lack of personal involvement. Plaintiff's allegations are adequate to warrant discovery as to Defendant Maiga's actions related to the alleged deprivation of Plaintiff's Fourteenth Amendment procedural due process rights, and "[w]ithout a review of the results of that discovery, the Court cannot determine whether plaintiff

---

[11] *See* Conn. Dep't of Correction, Administrative Directives, Administrative Directive 9.4 (eff. June 16, 2016), http://portal.ct.gov/DOC/AD/AD-Chapter-9 (last visited November 1, 2021).

can allege facts that would defeat qualified immunity." *Thompson v. Cook*, No. 3:20-CV-381 (VLB), 2020 WL 5849243, at *5 (D. Conn. Oct. 1, 2020). Following discovery, Defendant Maiga may renew his qualified immunity argument as the evidence may warrant. The Court notes that following the Second Circuit's recent decision in *Tangreti v. Bachmann*, only a narrow set of circumstances would appear to support Plaintiff's claim in respect of Defendant Maiga at the summary judgment stage. *See Tangreti*, 983 F.3d 609, 618 (2d Cir. 2020) ("[A]fter *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' . . . The violation must be established against the supervisory official *directly*." (emphasis added) (quoting *Iqbal*, 556 U.S. at 676)).

Accordingly, the motion to dismiss with respect to Defendant Maiga's entitlement to qualified immunity is DENIED, without prejudice to Defendant Maiga's ability to renew his argument later in this litigation upon a more fully developed record.

## IV.  CONCLUSION

For the reasons set forth above, the motion to dismiss filed by Defendants Quiros, Mulligan, Roach, Burgos, Valentin, and Maiga is GRANTED IN PART and DENIED IN PART. The Moving Defendants' motion is granted insofar as it is clear on the face of the Amended Complaint that Plaintiff failed to properly or fully exhaust his available administrative remedies with respect to the claim that the In-Cell Restraints Defendants subjected Plaintiff to in-cell restraints without a legitimate penological objective in violation of the Eighth Amendment. The Moving Defendants' motion is denied with respect to Defendant Maiga's argument that he is entitled to qualified immunity as to Plaintiff's Fourteenth Amendment procedural due process claim arising out of Plaintiff's placement on administrative segregation status.

Plaintiff's Eighth Amendment claim concerning his placement in in-cell restraints is DISMISSED WITH PREJUDICE. Accordingly, this case now shall proceed only as to Plaintiff's Fourteenth Amendment claim that Defendants Maiga, Martucci, and Acus violated Plaintiff's procedural due process rights in connection with his placement on administrative segregation status without a fair hearing; Plaintiff's Eighth Amendment claim that Defendants LaMountain, Koza, Peterson, and McCreary used excessive force against Plaintiff; and Plaintiff's Eighth Amendment claim that Defendants Mulligan, Burgos, Johnson, and McCreary failed to protect Plaintiff from a substantial risk of harm.

It is SO ORDERED.

Dated: New Haven, CT
          NOVEMBER 1, 2021

                                                              *s/ Charles S. Haight, Jr.*
                                                              CHARLES S. HAIGHT, JR.
                                                              Senior United States District Judge